from Weinstein v. University of Connecticut. Good morning, Your Honors. May it please the Court, my name is Jacques Parenteau and I represent the Plaintiff Appellant Luke Weinstein in this appeal. I'd like to get right to the heart of the matter. The District Court must be reversed in this case because the Court resolved facts in the light most favorable to the defendants or found facts which were not supported by the record in applying the Pickering balancing test and in reaching the decision that the defendant early was entitled to qualified immunity. And because the Court misapplied the, in addition, because the Court, should be reversed, because the Court misapplied the Pickering balancing test in weighing the speech. I found the briefing in this case a little confusing. It seems that the two ships passing the night somewhat. What is the protected speech? What is the speech that you claim was protected? The speech that the Court found to be protected in the January decision was his communication to the Office of Audit, Compliance, and Ethics at the University of Connecticut that the Dean's wife, Elaine Mosikowski, was receiving favorable treatment in the form of course relief. There was referred to as nepotism in the briefing, but in fact, as indicated by the Director of that Office of Compliance, this was. Right. But not that speech. Any other speech that's, that you're claiming is protected? We are not appealing the August decision. In the August decision, there was unprotected, found to be unprotected speech under Garcetti. The speech that you are claiming is protected. We're not interested in unprotected. What is protected? I was just responding to the question, Your Honor. Your Honor, the protected speech was the speech concerning the conflict of interest that arose from the Dean's favoring his spouse by appointing her to positions where she would receive financial benefit. This was perceived by the University itself to be. Anything other than that? Any speech other than the issue? Yes. In addition to the conflict of interest relating to the financial benefit, there was also speech to the OAC Office relating potential violation of the Institutional Review Board rules concerning obtaining information from underage students involved in the Special Olympics at the University of Connecticut, also under the direction of an accelerator run by the Dean's wife, called SCOPE, when the permission had not been received by the Dean to conduct those interviews, they didn't have parental consent. So both of those other speeches, you claim that those are protected, that was protected speech? Those two areas of speech are the areas of speech that we claim to protect both. So the University's response, in large part, to this claim of retaliation, is that why your client was not reappointed to various positions, was his opposition, which could be other speech but not protected, his opposition to changes that were being made in the IA program, and that's what you're saying is a pretext, is that right? What we are saying is pretexts are the reasons that the Dean himself set forth in a letter denying the plaintiff reappointment to the position, which were two. One was that he did not apply for the position by submitting a CV and a letter of interest, clearly pretext, because the Dean had offered him that job in a recorded conversation that we submitted the transcript and the recording evidence. Was that an offer with a condition? The condition was that he indicate after this discussion relating to the changes in the program, that they would be reducing the number of hours that the students had to attend and were being paid for in the accelerated to 30 hours a week. The condition was that my client buy into that program, indicate that he was going to proceed with the program, with his changes to the hours. At that point, and subsequent, he did... clear that he fundamentally disagreed with the administration's vision for the program, correct? I wouldn't say that he made it clear that he fundamentally disagreed with the vision of the program. He was arguing about one specific aspect of the way in which these accelerators operated. I think he said he didn't want to be the captain of a sinking ship. He felt it was going in the wrong direction. He wanted to go in a different direction. Wouldn't it be reasonable for the administration to say, if you don't agree with our vision, then you ought not to be the captain of this ship? Well, because as a matter of fact, this would be a factual matter for the jury to resolve. At the meeting, they had a full discussion about why Mr. Weinstein thought that the way in which he was operating the accelerator, requiring students to act as teams together, to be at the accelerator for a certain number of hours because they were supporting businesses, that this had achieved excellent results for the accelerator. But at that meeting, the dean said, well, you're going to have to live with the limitation that we've imposed, the 30-hour limitation. In fact, at the meeting, he said, I'm comfortable with offering you the job. And at one point he says, I have offered you the job, but you need to get back to me and let me know that you're going to accept it under the condition that I've indicated that we're going to have this limitation in the hours. And even at that point in time, in that meeting, as indicated in the transcript and as said to the dean, go check with George Plesko, who is the associate dean, and find out from him what exactly it is that we've agreed to tell the students in communicating what the parameters were going to be for the accelerators. And after you've talked to George Plesko, come back to me. And if you agreed of the changes, then you will have the position. That is what is indicated in the record. And in response to that communication, these are a number of university officials who were discussing the changes to the program and also the plaintiff's claim that his contract had been violated by having to reapply for the position. After that, he signaled to the dean and in writing, through his chain of command, the executive director of the- When you look at those affidavits, they say at most that your client accepted the program or was willing to stay on as director of the program. It doesn't say anything about him having a change of heart as to his criticisms of the program or his willingness to abide by the vision that had been set by his superiors. Well, I- And, you know, the question here is whether the persistent opposition to it and the strength of expression is a reason not to reappoint him to the program without-in a way that doesn't raise any concerns about his complaint, his other complaint. In response to that, I think these are fundamentally questions that the jury would have to decide. There was no particular format of expression that was required to indicate that he had accepted the offer to continue. He was just told, I want to hear back from you. It's right there in black and white. I'm sorry. So what is the specific dispute of fact that's an issue that would preclude the defendants from prevailing under Mount Healthy? Mount Healthy. The Mount Healthy defense, which was not reviewed by the district court below, assumes that the dean would not have appointed the plaintiff for specific reasons, for other reasons. But the reasons that the dean provided for not reappointing the plaintiff were in writing. He said, you didn't apply for the program and so you didn't submit a CV, so we're not going to appoint you. But that is clearly pretext because the job had been offered to the plaintiff. And the other reason that was set forth in the letter was not the prior opposite. It was offered with a condition, but okay. Well, the condition was you have to indicate that you're on board without any particular communication. There's nothing in the record that I've seen, and I think you've been asked to point something out, that says that he satisfied that condition. He spoke through the executive director of the CCEI, who then informed the associate dean. She said to him, put it in writing. That executive director put it in an email, that is part of the record, and indicated in the email that Luke is on board with the program. Please send the necessary papers. He's on board with the program. Tell me where in the appendix that is. I thought it says, I thought the letter said that he was prepared to accept another. 886, Your Honor. 886? Yes. So, the email there is from the executive director, Luke Weinstein's boss, saying, I talked to Lynn in person. She asked me to send this directly to Chris. That's the dean. I'm looking at page 86. I'm sorry, 886? Is that what you said, 886? 886, okay. He's willing to stay on as director. I don't see he's on board with the program. Am I looking— Well, I think that given the conversation that went on in that meeting, it lasted an hour, that it is implied from the communication that, in other words, the dean's offer— He's willing to stay on as director on his terms. Oh, well, it's not just the—it didn't say he was willing to do it on his terms. He said he was willing to, as you have indicated— He was on board. Well, you're right. It doesn't say he was on board. But there was no particular form of communication that was requested of him. And before this occurred, Mr. Weinstein had been in communication with the associate dean reviewing what would be said to the incoming students. He formulated the letters exactly how he was told. That evidence itself demonstrates that he was on board with the program because he was writing letters to the students exactly as he was told to do. Right. I know you want to reserve time and rebuttal when we hear from the university. Good morning. May it please the Court. I'm Nancy Brouillette, assistant attorney general for the state of Connecticut, and I represent the dependent appellees. I think this panel clearly sees what Dean Early was facing. You have an individual, Luke Weinstein, who even as late as June 22, 2010, is saying, I'm not prepared to even apply. I want to wait until after our meeting, which was the meeting held July 19, 2010. And brother counsel said there was a transcript. I want to reemphasize there was not a transcript. It was a surreptitious recording by Luke Weinstein, which all the depositions indicate was unintelligible in parts. And that alleged transcript, which is part of the decision of Magistrate Judge Holly Fitzsimmons in regard to the request for admissions, makes it clear it wasn't transcribed by a court reporter. And in fact, that transcript says it's from a July 19, 2014 meeting. Nonetheless, you do have an evidence at 269, the July 28, 2010 letter from Dean Early, listing the reasons for his decision not to reappoint Luke Weinstein. And he's made it clear that- What page was it? I have it as 269, Your Honor. He makes it clear there is not that buy-in. Prior to this meeting, you see from March of 2010, repeated communications disagreeing with almost everything the dean and the provost have said. You see the repeated refusal of Luke Weinstein to even submit his CV, or to even send a letter of interest in the position. Rather, he has Richard Deno nominate him. The dean repeatedly asks his executive assistant, please submit your CV. The dean also says, even at the July 19th meeting, we asked you to do essentially the minimum. Submit your CV so we know you're on board. And what do you get instead? After that meeting, Luke Weinstein says, I'm willing to accept the position. But he won't even communicate that directly, though he was previously emailing with the provost, vice provost, Bull, the dean, and many others. So you don't have the buy-in. So this is as if you were trying the case. Yes. So we have to decide whether or not this could be decided as a matter of law. Absolutely, Your Honor. Because there is protected speech here. He complains about the nepotism charge, and he complains about certain requirements of students. And the argument, as I understand it, is given that there were these charges, and one of them pertained directly to the dean, that we can't decide as a matter of law whether he wasn't appointed because of his opposition to the program, or whether he wasn't appointed in retaliation for these protected statements. Well, significantly, in regard to the Institutional Review Board and the use of students, the district court noted that the plaintiff did not claim there was a civilian analog. And in fact, the speech about the Institutional Review Board was not protected speech. The court did find in its second decision that the speech concerning claims of nepotism had some limited value. And then he applied correctly the Pickering balancing test. We have one limited instance of raising a concern about nepotism. But that's in the May 25, 2010 email to Attorney Rochelle Redwin, the Director of Compliance. There was never a formal complaint by anyone about nepotism. And in fact, if you even look at the complaint in this matter, the plaintiff says that another professor, John Matthew, complained to Rochelle Redwin about nepotism. But it doesn't die there. I mean, ultimately, the nepotism charge is cleared. But there's an investigation that this triggers. Absolutely. Yeah. So to the extent that he's got a colorable claim of retaliation, it's based on the fact that, hey, I'm the one who complained and triggered this whole investigation. But Dean Early has testified. I thought he knew about John Matthew making complaints. And there were a number of people who are raising this upset within the School of Business. Dr. Mazuchowski had been employed since 2007. She started working there in 2008 as a separate professor. She did not report to the dean. So when they do the investigation, they see she reports to the dean of the School of Pharmacy and the vice provost. So that's why the court correctly found this has limited value when you look at Pickering. But the Mount Healthy defense protects Dean Early. Because clearly, given this constant disruption by the plaintiff during this time period, his refusal to accept the redesign for the MBA program, the innovation accelerator, looking to act with impunity to exact a price in the efficient operation of the School of Business and faculty, the dean was entitled to not reappoint him. Further, of course, the dean is entitled to the protection of the qualified immunity defense. And certainly, the Supreme Court's decision just this week on Monday in White v. Pauley reminds us that the conduct at issue would have to be something that was clearly established. I don't believe under the case- Do you accept the facts as represented by the plaintiff? Absolutely. If he was terminated because he complained about the dean's wife being given favoritism, you don't think it was clearly established that that would be impermissible? No, Your Honor. Because at the time this decision was made, we have the benefit of Second Circuit's decisions in Huff, Pulaski v. Giuliano, which came out shortly before, another Connecticut employee. We have Sousa v. Rock, which was twice issued. In fact, Judge Chin was on the second. They help us because they say, even if you have this public concern and you look at the disruption and what the dean making the decision knows, the law was not clearly established. And certainly, somebody in the objectively reasonable position of the dean would not realize. You are saying, I just want to get this clear, that if a public employee decries nepotism by a top university official and complains about that, that it's not clearly established that that's protected speech? Not the way it was brought up in this instance, Your Honor. Based on the facts, looking at the light most favorable to the plaintiff. And that's the reason Early didn't appoint him. Right. That's the light most favorable to the plaintiff. And you're saying Early could have thought that he could refuse to reappoint Weinstein because Weinstein had complained about nepotism to the dean's wife? Based upon the disruption to the school and the lack of efficiency, that yes, Dean Early, knowing that people had raised issues, there were no formal complaints filed with audit compliance and ethics. And Dean Early believed, and the plaintiff said in his complaint, it was Professor Matthew who made these complaints. Somebody in Dean Early's position. Qualified immunity argument is your strongest, but if you want to pursue it, fine. Otherwise, I think you might want to spend time on some of your other arguments. Absolutely, Your Honor. In the Weintraub decision, which was also in 2010, we have this court quoting from a Board of Readings decision from the Seventh Circuit talking about this could have been viewed as unprotected speech. It is essentially the plaintiff's continuing complaints about everything that exists in the School of Business. Remember, Dr. Mazzacazzi has been there since 2008. These issues were not coming up and are raised in the context. You already set aside unprotected and protected. Let's assume for now that that conversation about the dean's wife was protected speech. Do you agree that on this record, there was some record evidence that Mr. Early knew of Mr. Weinstein's nepotism complaint? I believe he heard about it in addition to the whole panoply of other complaints, including John Mazzacazzi's. Yes, but as is clear, and of course there was extensive deposition testimony in this regard, you have Dean Early speaking to the provost prior to that time about problems with Weinstein's performance, about problems with the students, about concerns that he's actually overburdening, especially foreign students who were there. So there were many different reasons. So yes, I believe that under the Mount Healthy defense, it would be clear that Dean Early acted in a reasonable manner and this should not go to the jury. That the court correctly looked at the Pickering balancing test and although he did not address and we raised the Mount Healthy defense, it's clear that Dean Early would have that protection. Defendants rest on their brief. Thank you. I wanted to ask about the assistant professor position. Yes, Your Honor. That he's not renewed and that's roughly a year later. May of 2011, yes. Was there any additional First Amendment activity? Yes, Your Honor. What was that? Following the denial of the position for the reasons stated in the letter, Mr. Weinstein filed a grievance with the university after the university refused to investigate his retaliation complaint and he claimed retaliation for having engaged in the conduct that we're talking about, whistleblowing conduct. So that grievance continued through a decision in December of 2010 where the grievance was denied saying there was no whistleblowing, there's no retaliation because you were properly denied reappointment for the reasons stated in the letter. Dean Early wrote that decision and then afterwards, and so then he was denied reappointment contrary to the procedures at the University of Connecticut before May of 2010. So he engaged in First Amendment protected conduct by continuing to raise the issues as a whistleblower and that satisfies him. To be clear as to what you just said, when was he denied reappointment? You said even before May 2010? That was the denial to the appointment of the directorship. His failure to receive another appointment as assistant professor came a year later, right? Correct. He was denied the director July of 2010. He was reappointed to the assistant professorship position in June of 20. But during that timeframe? Well, no, let's just make this be clear. Contrary to the university's rules, in June of 2010, he was only reappointed to the APIR position. These were conjoined appointments from 2007 because there was all of this. He wasn't denied that position for the next year. No. He was reappointed. All right. So when he's not reappointed the following year? Correct. You're saying it's in retaliation for what speech? For his initial speech, which resulted in him not being appointed to the director position in July. But then after that, he filed a grievance saying he was a whistleblower for raising matters of public concern at the university. And there's a decision written by Dean Early in 2010 saying you weren't retaliated against the whistleblower because of the reason set forth in the July 28th, 2010 letter, which getting back to Mount Healthy, I must emphasize that for the Mount Healthy defense, it requires I would not have reappointed you for reasons other than your protected conduct. The reasons that were provided in the July 28th letter are pretextual. And they do not cite his longstanding resistance. I'm trying to figure out though, whether the denial of the assistant professorship reappointment is based on anything besides the statements that resulted in the denial of the director appointment. And you've referred us to this grievance letter. So the grievance letter is filed when? Okay, the grievance from 2010, because there were two... No, but when in 2010? Because a lot of things happened then. 12-10-10 was the decision. The grievance was filed in September of 2010. There was a hearing before the decision was rendered. And the non-reappointment to the APIR position occurred in May of 2011 for the following year. To respond to your question, Your Honor, about where is Dean Early's response, it's at 9-0-9-9-10. Yeah, 9-0-9-9-10. And there was a subsequent grievance with respect to the non-reappointment to the APR position, which was also denied by the university. And we also claim pretext as to those reasons. These are issues the jury should get to resolve, Your Honor. Thank you very much.